UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BETH LOCASCIO, :
    Plaintiff, :
: CIVIL ACTION NO.
v. : 3:02CV299(SRU)
:
IMPORTS UNLIMITED, INC., :
    Defendant. :
:

## MEMORANDUM OF DECISION AND ORDER

Beth Locascio ("Locascio") sued Imports Unlimited, Inc. ("IUI") alleging that IUI's sale to her of a Jeep Cherokee violated the federal Motor Vehicle and Cost Saving Act ("the Odometer Act") and the Connecticut State Unfair Trade Practices Act ("CUTPA"). The case was tried before the court, without a jury, on March 1, 2004. This decision constitutes the court's findings of fact and conclusions of law under rule 52(a) of the Federal Rules of Civil Procedure. Judgment will enter for the defendant on the Odometer Act claim and for the plaintiff on the CUTPA claim. Plaintiff is awarded nominal damages in the amount of $10.00 and reasonable attorneys' fees.

### Jurisdiction

The court has federal question jurisdiction over the Odometer Act claim pursuant to 49 U.S.C. § 32710 and 28 U.S.C. § 1331. Supplemental jurisdiction over the CUTPA claim is appropriate under 28 U.S.C. § 1367.

### Findings of Fact

During a one-day bench trial, both parties presented evidence, primarily consisting of testimony by Locascio and the owner of IUI, Michael Caro. Based on the testimony and on my review of all the evidence, I make the following findings of fact.

Defendant IUI is a specialty used car dealership. It is primarily in the business of buying and reselling "theft recoveries" – vehicles that were stolen from their owners and later recovered by the owner's insurance company. The insurance companies obtain title to these vehicles as the result of payment of an insurance claim. The vehicle at the center of this litigation – a 1997 Jeep Grand Cherokee – is one such recovered vehicle. When IUI first purchased the Jeep, it had – on account of its "theft recovery" status – been designated by the insurance company as a "constructive total loss" and its certificate of title was branded "rebuilt."[1]

At some point prior to coming into the insurance company's possession, the Jeep had been owned by a company called Golden Key Lease, Inc. ("Golden Key"). No evidence was offered at trial to embellish this bare fact. Specifically, there was no evidence tending to show what kind of business Golden Key was engaged in or how Golden Key used the Jeep.

In early 2000, Locascio came to IUI looking to purchase a Jeep Cherokee for her daughter. She also visited several other dealers and discovered that IUI's price was several thousand dollars below that of other dealers selling similar vehicles. She asked the IUI salesman about the history of the vehicle and was told that IUI was selling the Jeep on behalf of its previous owner, who was in need of ready cash. Locascio also inquired about the vehicle's title and was told that there was a five-percent chance that the vehicle had a "rebuilt title," i.e., a title branded "rebuilt."

Locascio testified that she believed a title branded "rebuilt" meant the vehicle had been physically destroyed and rebuilt, and she was willing to risk the five-percent chance that this had

---

[1] Motor vehicle title certificates are "branded" with various legally required designations meant to convey certain information about the history of the vehicle. Branding words include such terms as "totaled," "salvaged," and "rebuilt."

occurred.

After gathering the necessary funds, Locascio purchased the vehicle from IUI for $15,900.[2] The sale papers given to Locascio included a "Purchase Order" that stated, among other things:

> An insurance company has deemed this vehicle a constructive total loss due to theft recovery. May have rebuilt title. This vehicle was not totaled due to damages.

Locascio signed the Purchase Order directly below these words. The Purchase Order also contained a section stating: "This motor vehicle being purchased is a previous rental/lease vehicle." The box next to this section was not checked and the space for the purchaser's initials was left blank. As part of the sale, IUI provided Locascio with an "Odometer Disclosure Form," which stated the correct mileage of the vehicle, but did not disclose that the vehicle had a branded title.

Locascio was never given the Jeep's certificate of title. This was not, however, because IUI did not have the certificate. On the contrary, Caro – the owner of IUI – admitted that, at the time of the sale, IUI was in possession of a certificate of title for the vehicle, but chose not to give it to Locascio. That title was branded "rebuilt."

Caro further testified that it was IUI's practice never to provide customers with titles that were branded "rebuilt," but instead to include language in the purchase order similar to the language in the document provided to Locascio – language indicating that "this vehicle may have a rebuilt title." Approximately 75 to 80 percent of IUI's business is in vehicles with titles that have been branded "rebuilt."

---

[2] Along with taxes and other costs, the total amount paid was approximately $17,000.

Locascio was not informed that the vehicle was previously owned by Golden Key. Caro testified that IUI had performed no research into the history of the Jeep and so did not know that the Jeep had previously been owned by Golden Key. Caro further testified that, in general, IUI did not research the history of the vehicles it sold beyond whatever information was provided to it by the previous owner.

Shortly after her purchase of the vehicle, Locascio moved to Florida. She soon began to experience problems with the Jeep and consequently decided to purchase a different vehicle. She hoped to trade in the Jeep as part of the new purchase. In attempting this, she discovered that dealers either would not take the Jeep or would only pay its scrap value, a few thousand dollars. The reason for this, she was told, was because the Jeep's title was branded "rebuilt."

Locascio testified that, had she known the Jeep's title was branded "rebuilt," she would not have purchased it and, if she had, would have paid no more than eight or nine thousand dollars.

Discussion

Locascio claims that IUI's failure to provide her with the Jeep's title violated the Odometer Act and CUTPA. She further claims that the failure to disclose that the vehicle was previously a commercial lease vehicle constitutes an additional CUTPA violation. She seeks treble damages and attorneys' fees under the Odometer Act. She seeks actual damages, punitive damages and attorneys' fees under CUTPA.

*Odometer Act Claim*

The Odometer Act imposes on car dealers various requirements intended to ensure that automobile consumers are provided with accurate statements of a car's mileage. See 49 U.S.C. §

32705 ("disclosure requirements").  Pursuant to the Odometer Act, the Secretary of Transportation has imposed the requirement that, among other things, a dealer must, upon sale of a motor vehicle, include on the title a statement of the vehicle's current mileage.  49 C.F.R. § 580.5(c) ("the transferor shall disclose the mileage on the title, and not on a reassignment document").  The regulations also provide that the mileage disclosure may be made on a supplemental form in cases where a title certificate is not available or where there is no room on the certificate.  49 C.F.R. § 580.5(g).

Failure to provide a purchaser with a copy of the certificate of title, when such title is available, technically violates the Odometer Act.  If the title certificate is not provided to the purchaser, the appropriate mileage is necessarily not disclosed to the purchaser *on the title certificate*, as required by the Act.  It makes no difference that the accurate mileage may be disclosed on a separate form because, absent one of the excusing circumstances in the regulations, the mileage must be disclosed *on the title certificate*.

In order for a civil plaintiff to recover damages under the Odometer Act, she must prove (a) a violation of the act, (b) made with intent to defraud.  49 U.S.C. § 32710(a).  Locascio has shown that IUI committed a technical violation of the Odometer Act by failing to provide a copy of the certificate of title with the appropriate disclosure.  The only question is whether she has shown that this was done with the intent to defraud.

Locascio makes the creative – though not novel – argument that this second prong – "intent to defraud" – is satisfied simply by demonstrating that the defendant had a general intent to defraud her with regard the state of the Jeep's title.  I disagree.

Some courts have reached the conclusion urged by Locascio.  See, e.g., Salmeron v.

Highlands Ford Sales, Inc., 223 F. Supp. 2d 1238 (D.N.M. 2002) (withholding of title concealed that car was previously a rental car); Yazzie v. Amigo Chevrolet, Inc., 189 F. Supp. 2d 1245 (D.N.M. 2001) (withholding of title concealed information about truck's prior use).  These courts held that a general intent to defraud satisfies the Odometer Act's requirements.

More commonly, however, courts have held that the Odometer Act was only meant to cover fraud related to a vehicle's mileage.  See, e.g., Mayberry v. Ememessay Inc., 201 F. Supp. 2d 687 (W.D. Va. 2002); Ransom v. Rohr-Gurnee Volkswagen, Inc., 2001 WL 1241297 (N.D. Ill. Oct. 15, 2001); Michael v. Ferris Auto Sales, 650 F. Supp. 975  (D. Del. 1987).  I find these courts' reasoning persuasive.

The Odometer Act makes clear that Congress' intent in passing the Act was to prevent consumers from being defrauded about the mileage of vehicles they were looking to purchase.  See 49 U.S.C. § 32701.  It is most in keeping with Congressional intent, therefore, to read the "intent to defraud" requirement of the Odometer Act as requiring an intent to defraud *with respect to the vehicle's mileage* and not an intent to defraud with respect to any possible aspect of the sale of the vehicle.  A contrary holding would ascribe to Congress the unlikely, and unsupported, intent of allowing the Odometer Act to serve as a vehicle for plaintiffs to bring numerous state-law claims into federal court, simply because the claims concern defects in an automobile's certificate of title.  Accordingly, I conclude that private relief is only available under the Odometer Act, 49 U.S.C. § 32710(a), when a plaintiff has established a defendant's intent to defraud the plaintiff about the vehicle's mileage.

In this case, Locascio has not shown that the defendant intended to defraud her – or that she was ever misinformed – about the mileage of the vehicle she purchased.  Her claim for relief

under the Odometer Act is, consequently, denied.

*CUTPA Claim*

Under the Connecticut Unfair Trade Practices Act, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b. In general, there are two methods a court uses for determining whether a practice violates CUTPA.

First, and simplest, the Commissioner of Consumer Protection sets forth certain regulations a violation of which is a *per se* violation of CUTPA. See Conn. Gen. Stat. § 42-110b(c); Conn. Agencies Regs. § 42-110b-28.

Second, if no regulation covers the practice in question, the court applies the so-called "cigarette rule" to determine if a given practice violates CUTPA. Under this rule the court considers three factors –

> (1) [W]hether the practice without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen].

Jacobs v. Healey Ford-Subaru, 231 Conn. 707, 725 (1995) (brackets in original; internal quotation marks omitted). The court need not find all three criteria satisfied to find a violation; rather it considers the extent to which each criterion is met -- satisfaction of one criterion may be enough to impose liability. Id.

1. Withholding Title

Locascio first claims that IUI violated CUTPA by not providing her with a certificate of

title to the Jeep and informing her that the Jeep *may* have a rebuilt title when, in fact, IUI had possession of the certificate of title and knew that the Jeep *did* have a rebuilt title.  Locascio does not claim this practice violated a specific regulation, but instead argues that it is unfair under the "cigarette rule."

IUI's withholding of the certificate of title and IUI's misrepresentation of the title's contents did violate CUTPA.  At a minimum, the conduct satisfies the first two prongs of the "cigarette rule."

First, IUI's conduct violated the law.  Connecticut General Statutes §14-62(d) provides that no dealer shall sell any used motor vehicle without furnishing to the buyer a valid certificate of title.  IUI sold Locascio the Jeep without furnishing her the title certificate, despite the fact that the certificate was in IUI's possession.  Furthermore, Connecticut General Statutes § 42-225(a) provides that no dealer may make any false, misleading or deceptive statements about the history of any used motor vehicle offered for sale.  Nevertheless, IUI informed Locascio that the Jeep had only a five-percent chance of having a rebuilt title when IUI knew that the Jeep certainly had a rebuilt title.

Second, IUI's conduct was unscrupulous.  IUI's salesman misled Locascio by telling her that the vehicle may have had a rebuilt title when IUI had the actual title that was branded "rebuilt."  Additionally, IUI had an elaborate system – that included the use of a supplemental odometer disclosure and vague statements in a purchase order – designed to avoid providing Locascio with the actual certificate of title that was branded "rebuilt."

Moreover, although I conclude that the one sale to Locascio is sufficient to constitute a violation of CUTPA, see Johnson Electric Co. v. Salce Contracting Ass'n, 72 Conn. App. 342

(2002) (holding that a single act is sufficient to support a CUTPA claim), this was not a one-time occurrence, but a regular practice at IUI. Caro testified that IUI, at the time it sold Locascio the Jeep, routinely withheld title certificates branded "rebuilt" and instead merely informed purchasers that the vehicles' titles "may" have been branded.

Accordingly, I conclude that IUI's sale to Locascio, as well as its general practice of withholding titles branded "rebuilt" and misinforming purchasers about the contents of those titles, violated CUTPA.

2. Lease Vehicle

Locascio claims that IUI further violated CUTPA by failing to inform her that the vehicle in question was a rental vehicle or lease fleet vehicle. This, she claims, violated Department of Consumer Protections regulations, see Conn. Agencies Regs. § 42-110b-28(b)(2)(C), making it a *per se* CUTPA violation. She also argues that, even absent this regulation, the purchase order she was given affirmatively misrepresented the vehicle's history, because it did not have a check next to the box designating the vehicle as a previous rental or lease vehicle.

This claim fails for the simple reason that there was insufficient evidence offered at trial to support the premise that the Jeep was ever a rental vehicle or lease fleet vehicle. Locascio, in support of her contention about the Jeep's prior use, relies solely on the fact that at one time this vehicle was owned by Golden Key. Absent some evidence about the type of business Golden Key engaged in and, more specifically, how it used the Jeep, I am unable to find that the vehicle was ever used as a rental or lease fleet vehicle.

Damages

Having concluded that IUI violated CUTPA, I turn to the issue of damages.

*Actual Damages*

A plaintiff bringing suit under CUTPA must demonstrate an "ascertainable loss" she suffered as a consequence of the unfair practice in question. Conn. Gen. Stat. § 42-110g(a). In order to make out a prima facia case, the plaintiff need not prove the amount of "actual damages," only that the item received is different from that for which she bargained. See Hinchliffe v. American Motors Corp., 184 Conn. 607, 614 (1981).

Here, the evidence at trial demonstrated that Locascio paid $15,900 for a vehicle that she believed had only a five-percent chance of having a title branded "rebuilt." The vehicle's title was, in fact, branded as "rebuilt" and, absent IUI's CUTPA violation, Locascio would have discovered that before her purchase. A vehicle is worth less with a branded title than without. Similarly a vehicle is less valuable if it certainly has a branded title than if there is only a one in twenty chance it has such a title. Locascio bargained for the latter item; she received the former. This is sufficient to establish the existence of an ascertainable loss.

Although establishing actual damages is not necessary to make out a prima facia case, if a plaintiff wants to recover actual damages those damages must, of course, be proven. See Rizzo Pool Co. v. Del Grosso, 232 Conn. 666, 690 (1995) (Berdon, J. concurring). There was minimal evidence offered at trial on the question of damages. Locascio purchased the Jeep for $15,900. She testified that, had she known about the state of the title, she would have paid, at most, between $8,000 and $9,000 for the Jeep. Caro testified that he had purchased the Jeep, prior to its sale to Locascio, for approximately $15,000. He was aware of the state of the Jeep's title

when he purchased it, as was the seller.

This scant evidence does not permit a reliable calculation of damages. Actual damages in this case would be the difference between what Locascio paid and what the Jeep was truly worth at the time. The first quantity is known, but the second is not (even though it is ascertainable). Though Locascio's testimony about what she would have paid is admissible and relevant evidence concerning the value of the vehicle, I do not find it reliable.[3] She is not an expert on cars, and her self-serving, after-the-fact speculations are not reliable enough to serve as the basis for a damages calculation. I also find Caro's testimony about value unreliable. Moreover, even if his testimony was true, it is unclear that the price he was willing to pay is an accurate measure of the Jeep's value, because he intended to resell the car without disclosing the state of the title. On this evidence, I find it impossible to reliably determine the actual value of the Jeep at the time it was sold to Locascio.

In a case, such as this, where there is insufficient evidence to support an award of actual damages, it is appropriate for the court to award nominal damages. Rizzo Pool, 232 Conn. at 689 (Berdon, J. concurring). Accordingly, I award the plaintiff nominal damages in the amount of $10.00.

*Punitive Damages and Attorneys' Fees*

Locascio also seeks an award of punitive damages and attorneys' fees, as allowed by CUTPA. See Conn. Gen. Stat. § 14-110g(a), (c). In a CUTPA case, actual damages need not be awarded in order to award punitive damages or attorneys' fees. See Fabri v. United Techs. Int'l,

---

[3] "As a rule, the owner of property is competent to testify concerning its fair market value, and the weight to be accorded such testimony is for the trier to decide." Ridgeway v. Ridgeway, 429 A.2d 801 (Conn. 1980).

Inc., 193 F. Supp. 2d 480, 483 (D. Conn. 2002); Jacques All Trades Corp. v. Brown, 42 Conn. App. 124, 131 (1996).

Punitive damages are available under CUTPA in the court's discretion. Conn. Gen. Stat. § 42-110g(a). Punitive damages are appropriate when a violator was recklessly indifferent, intentional and wanton, malicious, violent, or motivated by evil. Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033 (2d Cir. 1992). I do not find that IUI's conduct rose to this level, and so, I decline to award punitive damages.

I do, however, find an award of attorneys' fees to be appropriate. Prior to trial the parties stipulated that, should the court deem attorneys' fees appropriate, the amount to be awarded would be determined by post-judgment submissions. In accordance with that stipulation, in the event that the parties are unable to resolve the attorneys' fees claim independently, plaintiff is ordered to submit a motion for attorneys' fees, with supporting documentation and affidavits, no later than March 26, 2004. Defendant must file any objection to that motion by April 16, 2004.

Conclusion

For the aforementioned reasons, judgment shall enter in favor of defendant on Count One of plaintiff's Amended Complaint; judgment shall enter in favor of plaintiff on Count Two of plaintiff's Amended Complaint, and nominal damages are awarded in the amount of $10.00. Plaintiff's request for punitive damages is DENIED. Plaintiff's request for attorneys' fees is GRANTED, the amount to be determined by the court in accordance with the procedure set forth in this order.

It is so ordered.

Dated at Bridgeport, Connecticut, this 12th day of March 2004.

/s/   Stefan R. Underhill
Stefan R. Underhill
United States District Judge