UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BETH LOCASIO
   Plaintiff

V.                                                                                   CIVIL ACTION NO.

IMPORTS UNLIMITED, INC.                                3:02CV299 (SRU)
   Defendant

MEMORANDUM OF LAW IN OBJECTION TO PLAINTIFFS APPLICATION FOR
AWARD OF ATTORNEYS FEE AND COSTS

The plaintiff commenced the above captioned action claiming that the defendant conduct in connection with the sale of a used motor vehicle violated provisions of the Motor Vehicle Information and Cost Savings Act, 49 U.S. C. 32701 and Connecticut Unfair Trade Practices Act, Section 42a-110(b) et seq. of the Connecticut General Statutes. The respective statutes are hereinafter referred to as the Odometer Act and CUTPA, respectively. In the first count of her complaint, the plaintiff alleged the defendant violated the Odometer Act in that:

    a.    the defendant failed to provide the original certificate of title in its possession

    b.    failed to maintain records pursuant to the odometer Act;

    c.    recklessly disregarded what the law required;

    d.      the defendant intended to deceive the Plaintiff with regard to the existence of the original title certificate and the true history of the motor vehicle.

In the second count of her complaint the alleged that the defendant violated CUTPA in that the defendant:

    a.      failed to issue an accurate odometer statement; and

    b.      sold the plaintiff a car with a branded title without showing the title to the Plaintiff and

    c.      failed to disclose that the subject vehicle was a commercial lease vehicle.

The Defendant failed to establish liability under the Odometer Act and the Court entered judgment on the first count of the complaint in favor of the defendant. As to the Second Count, the Plaintiff failed to prove that the defendant violated CUTPA by failing to issue an accurate odometer statement and failed to prove that the subject motor vehicle was a commercial lease vehicle. Notwithstanding the fact that the Plaintiff failed to offer any credible or probative evidence as to the loss or damages sustained by Plaintiff as a result of the Defendants actions, the Court found that the defendant violated CUTPA by failing

to use the title in its possession to convey the motor vehicle. The Court awarded nominal damages in the amount of $10.00. The Court also found that an award of attorney's fees is appropriate.

The Plaintiff has now filed a Motion for Attorney Fee, and supporting affidavit and Memorandum arguing for an award of attorney's fees in the amount of $20,377.50, together with costs and expenses. The proposed fee is based on an expenditure of 74.1 hours at an hourly rate of $275.00 per hour. The Plaintiff has filed an extensive memorandum in support of its Motion for Attorneys Fees. The Plaintiff argues that the Court is under a mandatory obligation to award attorneys fees and argues that the Attorney Fee award should be calculated on a "Lodestar" basis (reasonable hours times reasonable rates). The Plaintiff also argues that no adjustments should be made to the Motion for Attorney Fees because the Plaintiff vindicated important consumer rights and because the defendant resisted the Plaintiff efforts to settle the case matter without trial. The Plaintiffs argument is not supported by the law regarding attorney fee awards under the Connecticut Unfair Trade Practices Act.

### Standards and Criteria for Awarding Attorneys Fees Under the Connecticut Unfair Trades Practices Act

In relevant part Section 42a-110g (a) provides that "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. In relevant part section 42a-110g (d) provides "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." "Under CUTPA the allowance of an award of attorneys fee is to further the policy of encouraging "private attorney generals" to bring lawsuits to vindicate important rights." Gill v. Petrazzuli Bros., Inc. 10 Conn App. 22, 521 A.2d 212, 218 (1987). "When awarding Attorneys fees under CUTPA, the Court must consider the following twelve factors:

    1.    the time and labor required;

2. the novelty and difficulty of the questions

3. the skill requisite to perform the legal services properly;

4. the preclusion of other employment by the attorney due to the acceptance of the case;

5. the customary fee for similar work in the community;

6. whether the fee is fixed or contingent

7. time limitations imposed by the client or circumstances;

8. the amount involved and the results obtained;

9. the experience, reputation and ability of the attorneys;

10. the undesirability of the case;

11. the nature and length of the professional relationship with the client;

12. awards in similar cases"

Jacques All Trades Corporation v Brown, 57 Conn App. 189, 200, 752 A.2d 1098 (2000) citing, Steiger v J.S. Builders, Inc. 39 Conn. App. 32, 38, 663 A.2d 432 (1996)  The award of attorneys fees is within the discretion of the trial court, and its decision will not be interfered with unless there is an abuse of discretion. Gargano v Heyman, 203 Conn. 616, 622, 525 A.2d 1343 (1987).  The award of

attorney fees under Section 42-110g(d) is not unlimited. Rather, the award of an attorney fees under 42a-110g(d) is for Attorney fees which "**relates solely to claims related to the prosecution of the CUTPA claim and not to all claims.** Jacques All Trades Corporation v Brown, 57 Conn App. 189, 200, 752 A.2d 1098 (2000) . . . .**[T]he court can award attorney's fees under CUTPA only for those expense that were related to the prosecution of the CUTPA claim.** Id. See  Northington Partners Inc. v Executive Risk, Inc. 2002 Conn. Super. Lexis 3315 (2002).

The Plaintiff Has Failed To Allocate Expenses for Attorney Fees
Related to the Prosecution of the CUTPA Claims

Although the Plaintiff has filed an affidavit of setting forth the time and tasks performed in the prosecution of the Plaintiff cause of action accounting for 74.1 hours at assigning an hourly rate of $275.00 hour. The Plaintiff has failed to allocate its time between the successful CUTPA claim and the unsuccessful Odometer Act & CUTPA claims litigated in this matter. Absent an allocation of time between the claims, the court is left with no factual basis for awarding fees to the Plaintiff. The description of the time expended is cryptic, at best. Although the defendant has analyzed the time records filed in support of its Plaintiff Motion, the defendant is unable to discern any time allocated to the CUTPA

Claim on which the Plaintiff prevailed. The Plaintiff has failed to meet its burden of proof and the Plaintiff's motion should be denied.

## The Plaintiff Is Not Entitled To An Award Of Attorneys Fees For Time Expended On Novel Claims On Which The Plaintiff Did Not Prevail

The Plaintiff argues that the case included novel questions which were not resolved and that the Plaintiff should be compensated for advancing novel claims which were ultimately unsuccessful. The novel claims and arguments advanced by the Plaintiff in this matter were each resolved in favor of the Defendant.[1] The Plaintiff's novel "Odometer Law" claims were based on tenuous legal argument based on Yazzie vs Amigo Chevrolet, Inc. 189 F. Supp. 2d 1245 (D.M.N 2001) and Salermon v Highland Ford Sales, Inc. 223 F. Supp. 2d 1238 (D.M.N 2002 ) The arguments based on Yazzie and Salermon were expressly rejected by the Court.

The Plaintiff's "novel" CUTPA claims (failure to complete retail bill of sale constitutes representation that vehicle was not a commercial lease vehicle) failed. The Plaintiff expended time to amend her complaint to include an

---

[1] The Court held that the Plaintiffs arguments were "creative – though not novel –" Locasio vs Imports Unlimited, Inc. 3:02CV299(SRU) Pg 5

allegation that the Defendant failed to disclose that the motor vehicle at the center of the controversy was a commercial lease vehicle. Over the Defendants objection the Court granted the Plaintiff Motion to Amend her complaint to include this allegation. At the time of trial however, the Plaintiff failure to offer any probative evidence to support the argument that the vehicle was in fact a commercial lease vehicle. The plaintiff's counsel should be not be compensated for time expended to litigate matters which it ultimately made little or no effort to prove.

The Plaintiff counsel maintains that Plaintiff's counsel is a highly skilled and experienced consumer rights attorney, having settled more than 2500 consumer rights cases. That may be true, but it should go unnoticed that the examination of the two witnesses in this matter were marked by frequent interruption by the Plainiff's co-counsel. The interruptions ranged from whispering in counsel ear during the witness examination, participation in argument regarding evidentiary rulings, and direct examination of witnesses with the trial counsel on areas which trial counsel neglected to inquire. Our purpose here is not to be disingenuous to Plaintiff's counsel, but to bring to the courts attention that given the highly specialized nature of counsel's practice, one would have

expended a modicum of time to prove, among other things, that the defendant "failed to maintain records pursuant to the Odometer Act" ; "recklessly disregarded what the law required"; "intended to deceive the Plaintiff with regard to the existence of the original title certificate and the true history of the motor vehicle" as alleged in the first count and "failed to issue an accurate odometer statement", "failed to disclose that the subject vehicle was a commercial lease vehicle". A downward adjustment in the amount requested is appropriate.

### There Is No Evidentiary Basis For Awarding Attorneys Fees At A Rate Of $275.00 Per Hour

The Plaintiff has not offered any evidence as to the standard rates for Attorneys practicing before the federal and state courts for the District of Connecticut. The Plaintiff has not disclosed to the Court the terms and conditions of its engagement by the Plaintiff. From the commencement of the case, the defendant has suspected that the Plaintiff herself has little or no contractual liability to pay the Plaintiffs counsel for counsel services. Moreover, on the record of these proceedings, the Court (U.S.M.J. Garfinkle) found the

The Plaintiff has offered no evidence regarding the undesirability of the case, or the nature and length of the professional relationship with the client. The is no evidence indicating that the Plaintiffs attorney was precluded accepting other work. The plaintiff has offered no evidence of attorney fee awards in similar cases where nominal damages have been awarded.

<u>The Defendant Should Not be Punished for<br>Resisting Plaintiffs Settlement Demands</u>

The Plaintiff argues that no adjustment should be to the request of Attorney Fees because the "defendant ignored plaintiff's persistent efforts to settle." The Plaintiff argues the defendant's resistance to settlement is characterized as a "disproportionate effort to avert his exposure *to already limited damages.*" The Defendant resisted the Plaintiff's settlement efforts throughout these proceeding for several reasons. The Plaintiff demanded the sum of $12,000.00, together with Attorneys fees and costs on April 1, 2003. (Exhibit A) The Defendant's evaluation of the settlement demand led the Defendant to conclude that the demand was unreasonable and excessive based on the facts then known to the defendant. Settlement of this case was also precluded by the

Plaintiff's ongoing employment of the lodestar tactic of augmenting the attorneys fees nearly every time the parties engaged in settlement discussions.[3]

A CUTPA claim should not be alleged as vehicle obtain attorney fees. See Northington Partners Inc. v Executive Risk, Inc. 2002 Conn. Super. Lexis 3315 (2002).citing Economic Development Associates v Citytrust, 3 Conn. L. Rptr. 403, 406 (1991). The Plaintiff has consistently advanced a claim for substantial damages through these proceedings. On the record, the Plaintiff requested an award of damages in amount approximating $30,000.00, if memory serves, together with attorneys fees and treble damages. At the commencement of the trial the Court encouraged the parties to engaged in settlement discussions. Settlement discussions during trial resulted in the Plaintiff counsel recalling the plaintiff to testify to shore up issues raised in the parties settlement conferences. At the conclusion of the trial, the court again encouraged the parties to continue its settlement discussions. As the parties were leaving the court room, the Plaintiff's Attorney offered to settle the claim for $25,000.00. Each effort to

---

[3] The court may recall that the Court engaged in a teleconference with counsel to discuss the Plaintiff Motion for Permission to File a Motion for Summary Judgment and Motion for permission to Amend Complaint. In that teleconference, the Court encouraged the parties to engage in settlement discussion. Following the teleconferences, the plaintiff sent the defendant a memorandum increasing its settlement demand to take into consideration the time expended by the Plaintiff's attorney to engage in the settlement discussion.

resolve this matter via settlement was marked by disparate positions and case evaluations by both parties. The parties expended 4-5 hours of time with USMJ Garfinkle in an effort to settle the case. That conference resulted in a substantial offer by the Defendant, which the Plaintiff summarily rejected.

### The Work Of The Private Attorney General is Moot

Proceeding on the theory that the Plaintiff's counsel is acting as a private attorney General, the defendant recognizes that the Plaintiff's attorney is entitled to compensation for vindicating important consumer rights. To wit: the use of original certificates of title to transfer title to motor vehicles to consumer. The legislature has crafted a statute directly parties to these types of transaction to use the title certificates. The Defendant admitted at deposition and at trial that it was the practice of the Defendant to use supplemental title documents provided by the Department of Motor Vehicles to transfer motor vehicles. At the time of this transaction, that was the practice employed by the Defendant. At trial the Plaintiff produced a memorandum published by the Commissioner of the Department of Motor Vehicles, a copy of which is annexed as Exhibit C. (Trial Exhibit #20). The directive from the Motor vehicle Department was directed to all Connecticut Licensed Dealers and in relevant part provided that "Connecticut

statutes require an assignment of ownership whether by the owner or a dealer, to be made in the space provided on the certificate of title" (Exhibit 20). The Defendant testified that since the publication of the memorandum, the Defendant has conformed its business practices to the Departments Directive. This is significant in the context of Attorney Fee award. The Department of Motor vehicles has already accomplished, through its directive, that which the Plaintiff attorney claims to have expended 74.1 hours of time to accomplish and for which compensation is now sought.

One final issue to be addressed relates to the imposition of Attorneys Fees assessed as sanctions in connection with Discovery and matters related to Plaintiff's Motion to enforce Settlement Agreement. In this regard, the plaintiff has already been reimbursed for the time expended by Plaintiff's Counsel to compel discovery compliance, and for the time expended to attend conference with Judge Garfinkle, as well as time expended by Counsel, pertaining the Defendants Motion to vacate the order enforcing the Settlement Agreement. The Plaintiff has received the sum of $3,765.25. The Plaintiff believes that the named sum represents fair and reasonable compensation for Plaintiff time in connection with this matter, said compensation having already been paid.

Conclusion:

Any award of attorneys fees must be reasonable and must be limited to the services rendered and the expenses incurred in the prosecution of the CUTPA Claim. The Plaintiff is not entitled to Attorneys Fees for any time or expense in connection with the Odometer Act Claims. Any award of Attorneys Fees should be reduced given that the public purpose served had already been addressed by the Department of Motor Vehicles of the State of Connecticut. The defendant should not now be punished for resisting the Plaintiff unreasonable demands. The Plaintiff sought $12,000.00 for the Plaintiff and recovered $10.00, the defendant maintained through the proceeding that the plaintiff suffered no damages as a result of this transaction. The Plaintiff failed to prove that she did and the court, having found a violation of CUTPA awarded $10.00. For each o f the foregoing reasons, the defendant requests that the Plaintiff application be denied. If not denied, the Plaintiff request should be subject to critical review and downward adjustment taking into consideration the factors discussed herein and the amounts already paid.

THE DEFENDANT:

BY _____
ROBERT E. GHENT
ITS ATTORNEY
P.O. BOX 1905
193 GRAND STREET
SUITE 414
WATERBURY, CT 06705
FEDERAL BAR NO: CT: 08690
TEL. NO.: 203- 597-1077
FAX NO: 203-757-5366
Email: r. ghent @snet.net

## **CERTIFICATION**

The undersigned, hereby certifies that a copy of the Foregoing was mailed on the above date, postage prepaid, to appearing parties:

Bernard T. Kennedy
Kennedy & Kennedy, LLC
49 Rose Street, Suite 301
Branford, Ct. 06405

Michael W. Kennedy
101 West Main Street
Branford, Ct., 06405

_____
Robert E. Ghent

# BERNARD T. KENNEDY
A LIMITED LIABILITY COMPANY
## ATTORNEY AT LAW

49 ROSE STREET, SUITE 301  BRANFORD, CT 06405  TELEPHONE (203) 481-1322  FAX (203) 483-7922

Bernard T. Kennedy
*also admitted in ME, MD, NY

btk296@aol.com

VIA FACSIMILE ONLY TO (203) 753-9555

April 1, 2003

Robert E. Ghent, Esq.
Box 1905
Waterbury, CT 06722

RE: Locascio v. Imports Unlimited, Inc.

Dear Attorney Ghent:

    Pursuant to your request, please be advised that estimated costs are $553. That estimate is base on anticipation that the cost of the deposition will be $300. Attorney fees to date are $8,670 plus the demand of $12,000 to Ms. Locascio.

    Kindly provide a copy of your client's bond with the State of Connecticut and its income tax return to the IRS for the year 2001 no later than April 4th.

    Should this case proceed to trial, I anticipate the additional costs for preparation for trial, trial and post-trial briefs will add an additional $15,000 in fees and more if the case must be appealed to the Second Circuit.

    My other though is, if you will agree, that if the matter does not settle this week, that I file a motion, with consent, with the court for permission to file summary judgment. This will substantially reduce fees.

    Your thoughts will be appreciated.

Very truly yours,

*[signature]*

Bernard T. Kennedy




# STATE OF CONNECTICUT
## DEPARTMENT OF MOTOR VEHICLES
60 STATE STREET    WETHERSFIELD, CONNECTICUT 00161
http://dmvct.org

## MEMORANDUM

TO:       Connecticut Licensed Dealers

FROM:     Title Division

DATE:     April 27, 2000

SUBJECT:  Assignment of Ownership

Connecticut statutes require an assignment of ownership, whether by the <u>owner or a dealer</u>, to be made in the space provided on the title certificate. If a vehicle is sold as new, the dealer is required to make the assignment on the Certificate of Origin.

A Supplemental Assignment of Ownership (form Q-1) should only be used to affect a transfer of ownership when there is no additional space on the title certificate or Certificate of Origin.

All assignments of ownership must include the odometer reading.

In addition, a dealer must also state the condition of the vehicle at the time of sale by checking the appropriate box on the reverse side of the title certificate.

Failure to comply will result in the suspension of the title application.

RWK/js

*Seat Belts Do Save Lives*

**PLAINTIFF'S EXHIBIT 20**

Pursuant to Section 14-3 of the Connecticut General Statutes, I hereby attest that this document is a true copy of the original on file in the Department of Motor Vehicles.

*John Yacavone*    Dated: 2/17/04
John Yacavone, Bureau Chief
Legal Services